## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

## GREENVILLE DIVISION

RALPH WILLIAMS,

      Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
d/b/a NATIONAL UNION FIRE INSURANCE
COMPANY, AMERICAN INTERNATIONAL
GROUP, INC. (AIG), HEALTHEXTRAS, INC.,
HEALTHEXTRAS, LLC, HEALTHEXTRAS
BENEFITS ADMINISTRATORS, INC.,
CATAMARAN HEALTH SOLUTIONS, LLC,
f/k/a CATALYST HEALTH SOLUTIONS, INC.,
HEALTHEXTRAS INSURANCE AGENCY, INC.,
ALLIANT INSURANCE SERVICES, INC., f/k/a
DRIVER ALLIANT INSURANCE SERVICES,
INC., ALLIANT SERVICES HOUSTON, INC.,
f/k/a JLT SERVICES CORPORATION,
ALLIANT INSURANCE SERVICES
HOUSTON, LLC, f/k/a CAPITAL RISK, LLC,
f/k/a JARDINE LLOYD THOMPSON, LLC, and
VIRGINIA SURETY COMPANY, INC.,

      Defendants.

**CLASS ACTION COMPLAINT**
(JURY TRIAL DEMANDED)

Now comes the Plaintiff, Ralph Williams, on behalf of himself and all other similarly situated residents of the State of South Carolina and alleges as follows:

1.    Plaintiff, Ralph Williams, is a resident of Greenville, South Carolina, who purchased and entered into an insurance contract, which was advertised under the name HealthExtras, with the Defendants, National Union Fire Insurance Company of Pittsburgh, PA,

1

d/b/a National Union Fire Insurance Company, a member of American International Group, Inc., (AIG), HealthExtras, Inc., HealthExtras Benefits Administrators, Inc., Catamaran Health Solutions, LLC, f/k/a Catalyst Health Solutions, Inc., HealthExtras Insurance Agency, Inc., HealthExtras, LLC, Alliant Insurance Services, Inc., f/k/a Driver Alliant Insurance Services, Inc., Alliant Services Houston, Inc., f/k/a JLT Services Corporation, Alliant Insurance Services Houston, LLC, f/k/a Capital Risk, LLC, f/k/a Jardine Lloyd Thompson, LLC, and Virginia Surety Company, Inc., that purportedly provided him with a One Million Dollar ($1,000,000.00) lump sum Accidental Permanent and Total Disability Benefit in the event that he became permanently disabled and could not return to work, (formerly underwritten by Federal Insurance Company, currently underwritten by National Union Fire Insurance Company of Pittsburgh, PA,) and a Two Thousand Five Hundred ($2,500.00) Emergency Accident and Sickness Medical Expense Benefit underwritten by Virginia Surety Company, Inc.

2.     Defendant National Union Fire Insurance Company of Pittsburgh, PA, d/b/a National Union Fire Insurance Company, is a member of American International Group, Inc. (AIG), (hereinafter "National Union"), was and is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has done business at all relevant times in the State of South Carolina, with its principal office located at 175 Water Street, 18th Floor, New York, NY 10038, and with its registered agent located in Pennsylvania, namely, Corporation Service Company, 2595 Interstate Drive, Harrisburg, PA 17710.   Upon information and belief, Defendant National Union, at all times relevant to this action, was licensed as an insurance company and/or underwriter in the State of South Carolina.

3.     Defendant American International Group, Inc., d/b/a AIG Group Insurance Trust

2

for the Account of HealthExtras, (hereinafter "AIG") is a corporation with its principal place of business located at 2 Peach Tree Hill Road, Livingston, New Jersey with a registered agent located in Delaware, namely United States Corporation Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.   Defendant American International Group, Inc., d/b/a AIG Group Insurance Trust for the Account of HealthExtras, at all times relevant to this action, conducted business in the State of South Carolina.

4.      Defendant HealthExtras, Inc., was and is a corporation organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of South Carolina, with its registered agent located in Delaware, namely, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  Defendant HealthExtras, Inc., has asserted that on October 1, 2008, it changed its name to Catalyst Health Solutions, Inc., and that therefore, it "no longer exists."   However, HealthExtras does continue to exist and conducts business under the name HealthExtras as evidenced by an October 15, 2013 letter to the Plaintiff, Ralph Williams, under the name HealthExtras. (Exhibit A).  Defendant HealthExtras, Inc., has never been licensed or authorized by the South Carolina Secretary of State to conduct business in South Carolina or the South Carolina Department of Insurance to conduct insurance transactions in South Carolina, including the marketing and sale of insurance products in South Carolina.

5.      Defendant HealthExtras Benefits Administrators, Inc., was and is a corporation organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of South Carolina, with its registered agent located in Delaware, namely; The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE

3

19801.  HealthExtras Benefits Administrators, Inc., is a subsidiary of HealthExtras, Inc., and/or Catalyst Health Solutions, Inc., and has never been licensed or authorized by the South Carolina Secretary of State to conduct business in South Carolina or the South Carolina Department of Insurance to conduct insurance transactions in South Carolina, including the marketing and sale of insurance products in South Carolina.

6.     Defendant, Catamaran Health Solutions, LLC (Catamaran) is the corporate successor to Catalyst Health Solutions, Inc. (Catalyst) and is a limited liability company organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of South Carolina, with its registered agent located in Delaware, namely, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.   Catalyst has asserted that it is the corporation "formerly known as HealthExtras, Inc."   Upon information and belief, Defendant Catamaran has never been licensed or authorized by the South Carolina Secretary of State to conduct business in South Carolina or the South Carolina Department of Insurance to conduct insurance transactions in South Carolina, including the marketing and sale of insurance products in South Carolina.   Despite its representations otherwise, Catamaran has and continues to operate under its original trade name HealthExtras for the purposes of marketing and providing administrative services for the policies that are the subject of this Lawsuit until August 1, 2012 when it "divested" from itself, forming a wholly owned subsidiary known as HealthExtras, LLC.   Upon information and belief, this transfer was conducted in bad faith in order to hide assets and avoid liability in response to the filing of a similar Class Action Lawsuit filed in the Eastern District of North Carolina in 2012, *Petruzzo v. National Union Fire Insurance Company of Pittsburgh, PA, et al., 5:12-cv-113-FL.*

7.     Defendant HealthExtras Insurance Agency, Inc., was and is a corporation organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of South Carolina, with its principal office located at 2273 Research Boulevard, 2nd Floor, Rockville, MD 20850, with a registered agent located in Delaware, namely, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  HealthExtras Insurance Agency, Inc., was formerly registered with the South Carolina Secretary of State on October 5, 2000 and authorized to conduct business in South Carolina until May 1, 2007, when that entity was dissolved.

8.     HealthExtras, LLC, is a limited liability company organized and existing under the laws of the State of Delaware and was a former wholly owned subsidiary of Catalyst Health Solutions, Inc., and was divested from the merged entity, Catamaran, in 2012.   HealthExtras, LLC has a registered agent located in Delaware, namely, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.   Upon information and belief, HealthExtras, LLC currently administers, collects and allocates premiums for the insurance program complained of herein.

9.     Hereinafter, the Defendants named as HealthExtras, Inc., HealthExtras Benefits Administrators, Inc., Catamaran Health Solutions, LLC, f/k/a Catalyst Health Solutions, Inc., and HealthExtras Insurance Agency, Inc., and HealthExtras, LLC at times will collectively be referenced as "HealthExtras."

10.     Defendant Alliant Insurance Services Inc., f/k/a Driver Alliant Insurance Services Inc., was and is a corporation organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of South Carolina, with its principal office

located at 1301 Dove Street, Suite 200, Newport Beach, CA 92660, with a registered agent located in South Carolina, namely, Corporation Service Company, 1703 Laurel Street, Columbia, SC 29201.  Alliant Insurance Services Inc., f/k/a Driver Alliant Insurance Services Inc., is licensed with the South Carolina Secretary of State to conduct business in South Carolina and the South Carolina Department of Insurance to conduct insurance transactions in South Carolina, including the marketing and sale of insurance products in South Carolina.

11.    Defendant Alliant Services Houston, Inc., f/k/a JLT Services Corporation, was and is a corporation organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of South Carolina, with its principal office located at 92 Brookside Road, Waterbury, CT 06708, with a registered agent located in South Carolina, namely, Corporation Service Company, 1703 Laurel Street, Columbia, SC 29201.

12.    Defendant Alliant Insurance Services Houston, LLC, f/k/a Capital Risk, LLC, f/k/a Jardine Lloyd Thompson, LLC, was and is a corporation organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of South Carolina, with its principal office located at 5847 San Felipe, Suite 2750, Houston, TX 77057, with a registered agent located in South Carolina, namely, Corporation Service Company, 1703 Laurel Street, Columbia, SC 29201.   Alliant Insurance Services Houston, LLC, f/k/a Capital Risk, LLC, f/k/a Jardine Lloyd Thompson, LLC, is licensed with the South Carolina Secretary of State to conduct business in South Carolina and the South Carolina Department of Insurance to conduct insurance transactions in South Carolina, including the marketing and sale of insurance products in South Carolina.

13.    Hereinafter, the Defendants named as Alliant Insurance Services Inc., f/k/a Driver

Alliant Insurance Services Inc., Defendant Alliant Services Houston, Inc., f/k/a JLT Services Corporation, and Defendant Alliant Insurance Services Houston, LLC, f/k/a Capital Risk, LLC, f/k/a Jardine Lloyd Thompson, LLC, will collectively be referenced as "Alliant."

14.    Defendant, Virginia Surety Company, Inc., (hereinafter "Virginia Surety") was and is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 175 West Jackson Boulevard, 11th Floor, Chicago, IL, 60604.

## Jurisdiction, Venue and Choice of Law

15.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs. Additionally, at least one Class Member is a citizen of a state different from the corporate domiciles of the Defendants.

16.    This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

1.    The class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical;

2.    There are substantial questions of law and fact common to the class including those set forth in greater particularity herein; and

3.    This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

(a)    questions of law and fact enumerated below, which are all common of the class, predominate over any questions of law or fact affecting only individual

members of the class;

(b)      a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

(c)      the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

(d)      there are no unusual difficulties foreseen in the management of this class action.

17.      The Defendants, collectively and individually, at all relevant times herein conducted substantial business in this district, many of the violations occurred in this district, and many of the acts and transactions alleged in this Complaint occurred in this district.

18.      The Court has personal jurisdiction over all the Defendants, who have at least minimum contacts with the State of South Carolina because the Defendants conduct business there and have availed themselves of South Carolina's markets through its promotion, sales and marketing efforts, as well as the Defendants' issuance of insurance policies and collection of premiums within South Carolina to and from residents of South Carolina.

19.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20.      South Carolina's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amendment, §1, and the Full Faith and Credit Clause, Article IV, §1, of the U.S. Constitution. South Carolina has a significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff, thereby creating state interests that ensure that the choice of South Carolina state law is not arbitrary or unfair.

21.     The Defendants' actions and omissions of which Plaintiff complains were directly targeted at residents of South Carolina and are in derogation of the State of South Carolina's interest in the regulation of insurance sold and administered within the state.   South Carolina has an interest in regulating the Defendants' conduct in marketing, selling, collecting premiums for and administering insurance products within its borders to its residents.

22.     South Carolina residents were the target of these Defendants' marketing, selling, collecting premiums for and administration of insurance, and the Defendants' alleged misconduct injured and affected Plaintiff and the Class Members residing in South Carolina.

23.     Accordingly, the application of South Carolina's laws to the Plaintiff and proposed Class Members is appropriate under South Carolina's choice of law rules because South Carolina has significant contacts to the claims of the Plaintiff and all members of the proposed Class, and South Carolina has a greater interest in applying its laws here than any other State.

24.     Venue in the United States District Court for the Central District of South Carolina is proper because Defendants transact business within this District and a substantial part of the events giving rise to the claims at issue in this Complaint occurred in this District.

25.     South Carolina's substantive laws apply to the proposed Class, as defined herein, because Plaintiff properly brings this Class Action Complaint in this District alleging violations of South Carolina law, as well as federal statutory claims.

**Preliminary Allegations**

26.     This matter is governed by the law of the State of South Carolina and the United States of America.   This matter is not governed by ERISA 29 U.S.C. § 1001, *et seq.*

27.     HealthExtras, National Union, Alliant, AIG and Virginia Surety are at times

9

referred to collectively as Defendants. This action arises from the wrongful conduct of the Defendants toward the Plaintiff and others similarly situated in the State of South Carolina and the United States of America, including but limited to the following: (a) the illegal selling and underwriting of group insurance to consumers who were not members of any lawful, blanket group for which the sale of such an insurance product could be authorized; (b) the false and deceptive advertising, solicitation, sale, and post-sale marketing of disability insurance that is illegal under South Carolina law; (c) the creation of trusts in which to place this insurance to attempt to avoid state insurance regulations and laws; (d) the calculation and collection of excessive premiums or fees charged for this illegal insurance product; (e) conspiracy among the defendants to create a sham organization operating under the name HealthExtras for the purpose of avoiding the State of South Carolina's insurance regulations and laws; (f) conspiracy among the defendants to create a sham organization operating under the name HealthExtras for the purpose of charging excessive illegal premiums for a worthless disability insurance product; (g) conspiracy among the defendants to create a sham organization operating under the name HealthExtras for the purpose of concealing from the public and the State of South Carolina the true nature of the sham organization known as HealthExtras; and (h) other misconduct.

28.    These Defendants have engaged in activities that violate the statutory law and common law of the State of South Carolina and have transacted business within the State of South Carolina.

29.    This Complaint is based upon claims by Plaintiff, Ralph Williams, and others similarly situated against Defendants for various causes of action. The causes of action that are Class Allegations include the following: (a) violation of the Racketeer Influenced and Corrupt

Organizations Act ("RICO") codified at 18 U.S.C. §§ 1961-1968; (b) Breach of Contract, including violation of the Covenant of Good Faith and Fair Dealing; (c) Brach of Contract Accompanied by a Fraudulent Act (d) Unjust Enrichment; (e) Civil Conspiracy; (f) Punitive Damages; and (g) Injunctive Relief.   These tortious, unfair, and deceptive acts were committed by Defendants before the sale, during the course of the sale, and after the sale of the disability insurance product known as HealthExtras to the Plaintiff and all other similarly situated South Carolina residents, and these wrongful and illegal acts are continuing.

30.    Defendants acted, and continue to act, in conspiracy and in concert with each other in connection with the claims alleged herein.   Defendants are jointly and severally liable for the wrongful conduct alleged herein.

31.    This case seeks disgorgement and return of all illegal and/or excessive premiums, treble and punitive damages, as well as injunctive and other equitable relief, attorneys' fees and costs, interest, and other damages.

## Class Allegations

32.    Plaintiff, Ralph Williams, brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and as representative of a Class of individual residents of the State of South Carolina who owned, purchased or paid premiums for disability insurance coverage with Defendants for disability insurance product known as HealthExtras from 1999 through the date of class certification.

33.    Plaintiff Williams brings this action as class representative to recover damages and/or refunds from these Defendants for (a) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") codified at 18 U.S.C. §§ 1961-1968; (b) Breach of Contract,

including violation of the Covenant of Good Faith and Fair Dealing; (c) Breach of Contract Accompanied by a Fraudulent Act (d) Unjust Enrichment; (e) Civil Conspiracy; (f) Punitive Damages; and (g) Injunctive Relief.

34.    This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a)(1-4) and (b)(1).

35.    The Plaintiff Class is defined and proposed as follows:

> All individual persons in the State of South Carolina who own, owned and/or purchased disability insurance coverage and/or paid premiums for disability insurance known as HealthExtras with the Defendants from 1999 through the date of class certification.

> Collectively, these persons will be referred to as the Class.

36.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

37.    Excluded from the Plaintiff Class are:

(a)    Defendants and any entities in which any Defendant has a controlling interest;

(b)    Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of any Defendants;

(c)    The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer or employees assigned to this case;

(d)    Claims for personal injury, wrongful death and/or emotional distress;

(e)    Actual identifiable claims for disability benefits that have already arisen that

may be payable under the terms of said disability insurance policies;

(f)     Any attorneys representing the Plaintiff or the Class;

(g)     All governmental entities; and

(h)     Any person having entered into a release of claims with the Defendants concerning these allegations prior to the certification of this class.

38.     Numerosity Fed. R. Civ. P. 23(a)(1): The Class Members are so numerous that their individual joinder is impracticable. The exact number or identification of the Class Members is presently unknown, but it is believed that there are over 100 and most likely thousands of Class Members. The identity of the Class Members is ascertainable.    In addition to registration/enrolment rolls maintained by the Defendants, the Class Members may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means.

39.     Predominance of Common Questions Fed. R. Civ. P. 23(a)(2), 23(b)(3): Common questions of law and fact exist as to all the Class Members and predominate over questions affecting only individual Class Members.   These common questions include the following:

(a)     Whether the Defendants falsely advertised the disability insurance product known as HealthExtras;

(b)     Whether Defendants sold disability insurance policies and collected premiums for said insurance policies that were illegal under the law of the State of South Carolina;

(c)     Whether Defendants illegally sold disability insurance policies and collected premiums for those policies to a group of South Carolina residents that was not and

13

could not be a legal blanket group under South Carolina law;

(d)     Whether Defendants wrongfully collected and increased premiums for those illegal policies;

(e)     Whether any Defendant or several of the Defendants knew or should have known that selling and collecting premiums for the subject insurance policies was illegal pursuant to applicable South Carolina law and in derogation of the State of South Carolina's interest in regulating the sale of insurance within its borders;

(f)     Whether the Defendants have been unjustly enriched at the expense of Plaintiff and the Class Members;

(g)     Whether Plaintiff and the Class Members suffered any injury that was proximately caused by the unlawful acts alleged herein;

(h)     Whether the Defendants acted in conspiracy with each other to perform the illegal acts described herein; and

(i)     Whether Plaintiff and the Class Members are entitled to recover damages proximately caused by the alleged unlawful conduct, including actual damages consisting of restitution of premiums collected for the illegal policies, treble damages, damages recoverable under South Carolina common law, punitive damages, interest, attorneys' fees, filing fees, and reasonable costs of suit.

40.     Typicality Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of claims of all of the Members of the Class, all of whom owned or purchased disability insurance coverage or paid premiums for disability insurance coverage through a program known as HealthExtras from 1999 through the present date.

14

41.    Adequacy Fed. R. Civ. P. 23(a)(4); 23(g)(1): Plaintiff is an adequate representative of the Class because he fits within the class definition and his interests do not conflict with the interests of the Members of the Class he seeks to represent.   Plaintiff will prosecute this action vigorously for the benefit of the entire Class, he agrees to participate in discovery and attend any Court hearings required of him.   Plaintiff is represented by experienced and able attorneys from coordinated law firms that will collectively and jointly serve as Class Counsel.   Class Counsel has litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class.   Plaintiff and Class Counsel can fairly and adequately protect the interests of all of the Members of the Class.

42.    Superiority Fed. R. Civ. P. 23(b)(3): The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.   The class, as defined herein, is ascertainable from the Defendants' records or from records which the Defendants have access and control.

**Historical Background and Factual Allegations**

43.    In the late 1990s, Defendant HealthExtras established strategic marketing relationships with six of the nation's largest VISA and MasterCard issuing banks as well as American Express for access to their credit card and other customers to market a blanket group accidental disability insurance product to persons in South Carolina and throughout the United

States of America.

44.     Defendant HealthExtras initially engaged Reliance National Insurance Company to underwrite its disability coverage product and was aware that any underwriter would necessarily be required to comply with insurance regulation among the various fifty (50) states.

45.     Upon information and belief, in 1999 or 2000, Plaintiff, Ralph Williams, received marketing materials from Defendant HealthExtras, which were forwarded to him in mailings from his credit card issuer.

46.     Prior to the issuance of the marketing materials, Defendant HealthExtras retained and utilized the likeness of Superman actor, Christopher Reeve, to be the face of its marketing campaign.  Plaintiff Williams, like most Americans, was aware that Christopher Reeve had become paralyzed as a result of an equestrian accident.

47.     Upon information and belief, after expressing an interest in the HealthExtras program, Plaintiff Williams received a letter in 1999 or 2000 from Defendant HealthExtras signed by a Director of Client Services, which included the following statements:

> Enclosed please find the HealthExtras program description you requested.   Because lives change in an instant, like Christopher Reeve's, HealthExtras was created to provide families with financial security should the unthinkable happen.
>
> -   $1,000,000 cash payment if you are permanently disabled due to an accident.   And as a HealthExtras member, you have two tax-free option: a $1,000,000 lump sum cash payment or a $250,000 cash payment plus $5,000 per month for 20 years.
>
> -   $2,500 a year in reimbursements for coinsurance and deductibles for health care expenses when you are traveling.

48.     The HealthExtras benefit program touted and included in the coverage a One Million Dollar ($1,000,000.00) benefit in the event that Plaintiff Williams became permanently disabled as a result of an accident.

16

49. This mail solicitation from Defendant HealthExtras constituted direct-to-consumer marketing material(s) intended to induce Plaintiff to purchase and retain the specified disability insurance, wherein Defendant HealthExtras specifically offered Plaintiff Williams the opportunity to purchase disability insurance.

50. Defendant HealthExtras' written solicitation of Plaintiff Williams was the typical HealthExtras initial mailing solicitation, offering this disability insurance to certain targeted credit card customers who held credit cards with several of the nation's largest VISA and MasterCard issuing banks, as well as American Express.

51. Plaintiff Williams enrolled in Defendant HealthExtras' benefit program and agreed to pay the sum of ninety-five dollars ($95.00) per year which appeared as an annual charge on his credit card statement.

52. Upon information and belief, Defendant HealthExtras accepted Plaintiff Williams's enrollment in 1999 or 2000 by letter from the Director, Member Services, that advised the Plaintiff that "you have armed yourself with one of the most exciting and affordable disability plans found anywhere in America today." Additionally, upon information and belief, the acceptance letter included a photograph of Christopher Reeve and a message purportedly from him that stated "[b]ecause lives can change in an instant, as mine did, you should have the additional security for yourself and your family that HealthExtras can provide."

53. The HealthExtras disability policy purports to have two primary benefits: First, the Accidental Permanent and Total Disability insurance is advertised and purported to provide coverage of a One Million Dollar ($1,000,000.00) benefit in the event that the "member" becomes permanently disabled as a result of an accident. Second, an Emergency Accident and Sickness

Medical Expense Benefit that is advertised and purported to cover up to Two Thousand Five Hundred ($2,500.00) in medical expenses if the member suffers and accident or sickness while away from home.

54.     Plaintiff Williams's One Million Dollar ($1,000,000.00) Accidental Permanent and Total Disability Benefit was first underwritten by Federal Insurance Company, a member of the Chubb Group of Insurance Companies, a successor underwriter to Reliance National Insurance. Then, on January 1, 2005, the underwriter was changed again to Defendant National Union.

55.     Plaintiff Williams's Two Thousand Five Hundred ($2,500.00) Emergency Accident and Sickness Medical Expense Benefit has been underwritten from by Defendant, Virginia Surety from the date of his enrollment to present.

56.     Upon request, on October 15, 2013 HealthExtras mailed to Ralph Williams, on HealthExtras letterhead, a Description of Coverage of his HealthExtras disability policy.  The Description of Coverage indicated that it was a "brief description of coverage available under policy series C11695DBG" and that "[i]f any conflict should arise between the contents of this Description of Coverage and the Master Policy SRG 9540519 or if any point is not covered herein, the terms and conditions of the Master Policy will govern in all cases."

57.     Plaintiff Williams was not and has never been provided with a copy of policy series C11695DBG nor of Master Policy SRG 9540519.  Further, policy series C11695DBG nor of Master Policy SRG 9540519 has ever been provided to a lawful blanket group in South Carolina. Upon information and belief, no other member of the proposed class has ever been provided those documents either.  These documents contain extremely restrictive, conflicting and confusing terms and exclusions which render any disability insurance coverage virtually worthless to

18

consumers and are in sharp contrast and directly contradict the marking material developed and delivered to South Carolina residents by the Defendants.

58.     Plaintiff Williams has made payments via his credit card for the HealthExtras accidental disability premiums, upon information and belief from 1999 or 2000 through the present for the accidental disability policy sold to him by Defendant, HealthExtras.

59.     Upon information and belief, at some time between 2003 and 2005, the Defendants unilaterally increased Ralph Williams's premium to $131.00 per year. This premium increase was made without prior approval as required under South Carolina insurance law.

60.     Beginning in 2009, Defendant again increased the premium to $167.00 per year without any approval in violation of South Carolina law.

### The HealthExtras Disability Policy is Illegal Under South Carolina Insurance Law

61.     In South Carolina, a blanket accident health or disability policy may only be issued to an association to cover a group of members or participant defined by reference to specified hazards incident to an activity or operation sponsored or supervised by the association.

62.     In an extraordinary display of self-dealing, the Defendants created a Trust, which the Defendants own and control, which is called the "AIG Group Insurance Trust, for the Account of HealthExtras."   This is a fictitious, illegal and sham Trust that is alter-ego of the Defendants, with premiums collected for the benefit of them rather than a valid group of persons.   There is no constitution or bylaws and the HealthExtras members have no voting privileges or representation on any boards or committees.   This Trust was created for the sole purpose of selling the HealthExtras disability insurance to consumers with no supervision or oversight.

63.     Blanket group policies differ from individual policies in that a single master policy

19

is issued to a group or association, as opposed to the individual person being insured. Thus, the group or association is the actual policyholder. Each member of the group or association that is provided coverage under the master policy is issued a Certificate of Insurance that summarizes the coverage terms and explains the individual's rights under the master policy.

64.    South Carolina Department of Insurance Regulation 69-3 defines blanket insurance as follows:

> Insurance which contemplates that the risk is shifting, fluctuating or varying, and which covers a class of property or persons rather than any particular thing or persons.

65.    South Carolina Department of Insurance Regulation 69-3 defines group insurance as follows:

> A form of personal insurance which is issued to members of an organized body qualified, and not specifically prohibited, to be an insured, in which individual insurances are placed upon the persons of each member of that group but in which the group acts as an entity in the payment of premiums, inception of the contract, and the like.

66.    South Carolina Code Ann. § 38-71-720 provides, in pertinent part:

> (A) A policy or contract of group accident, group health, or group accident and health insurance may not be issued or delivered in this State, nor may any application, endorsement, or rider which becomes a part of the policy be used, until a copy of the form has been filed with and approved by the director or his designed except as exempted by the director or his designee as permitted by Section 38-61-20.

67.    South Carolina Code Ann. § 38-71-730 provides, in pertinent part:

> No policy of group health, group accident, or group accident and health insurance may be delivered or issued for delivery in this State unless it conforms to the following description:
>
>> (1) Except as provided in this item, the policy is issued to a trust or to insure two or more persons who are associated in a common group for purposes other than obtaining insurance.   (emphasis added).

20

68.     Upon information and belief, the South Carolina Department of Insurance has not approved either policy series C11695DBG nor Master Policy SRG 9540519 for sale to any eligible blanket groups in South Carolina or otherwise to any South Carolina consumers.     The "Description of Coverage" mailed to Ralph Williams on October 15, 2013, on HealthExtras letterhead indicates the following information (Exhibit B):

*Policyholder:*              *AIG Group Insurance Trust, for the Account of HealthExtras*
*Master Policy Number:*      *9540-519*
*Effective Date:*            *September 1, 2004*

*Broker of Record:*          *JLT Services Corporation*
                             *13 Cornell Road*
                             *Latham, NY 12110*

69.     The HealthExtras disability policy issued by Defendants to Plaintiff Williams and others similarly situated was not issued to a valid blanket group pursuant to South Carolina Insurance Code § 38-71-730 or any other section of the South Carolina Insurance Code, but instead was issued to AIG Group Insurance Trust, for the Account of HealthExtras, a group that was and is ineligible pursuant to applicable South Carolina law.

70.     The illegal group to whom the insurance product was sold consists solely of persons whose only commonality is that they have a credit card and were chosen by HealthExtras and others as a good marketing prospect for the policy.     The group for which Ralph Williams and other Class Members are a part of was formed by HealthExtras and the other Defendants only for the purpose of obtaining insurance. Therefore, Plaintiff Williams and similarly situated residents of the State of South Carolina who purchased HealthExtras policies are not individually or collectively within any permissible blanket groups of persons as contemplated by South Carolina Insurance Code as blanket groups are required to be organized and maintained in good faith for

21

purposes other than that of obtaining insurance.  In fact, the putative South Carolina Class Members are not even all customers of the same bank or credit card issuer.

71.     Accordingly, HealthExtras disability policy sold to Plaintiff Williams and all similarly situated South Carolina residents are illegal under South Carolina statutory law as all South Carolina policyholders do not fall within a lawful blanket group. The Plaintiff's group was formed only for and specifically for the purpose of obtaining insurance and for the benefit of HealthExtras and the other Defendants.  This illegal scheme devised and perpetrated by the Defendants effectively keeps the members in the dark and conceals the true nature of the Master Policy that contains broad harsh exclusion which the various underwriters use to wrongfully deny claims.

72.     Accordingly, pursuant to South Carolina law, the policy issued by the Defendants was not approved, and could not have been approved to be sold to the purported group of persons by the South Carolina Department of Insurance, and therefore illegal.

73.     By illegally selling the policy to a group that was not and could not be a legal blanket group, the Defendants have breached their duty of good faith and fair dealing with the Plaintiff and Class Members as a matter of law.

74.     Plaintiff Williams and all similarly situated South Carolina residents were charged premiums for the illegal and illusory coverage provided by these Defendants.

### The Purpose of HealthExtras and the Other Defendants' Violation of South Carolina Law in Issuing the Policy to Themselves

75.     The purpose of the Defendants' noncompliance with the requirement that the group be formed for the purposes other than obtaining insurance was to avoid the policy being issued to an actual group of persons.  If the policy had been issued to an actual group of persons that was

22

6:14-cv-00870-BHH    Date Filed 03/12/14    Entry Number 1    Page 23 of 43

organized together for some purpose other than obtaining insurance, the policy, the advertised promises, the excessive premiums, and the broad, harsh exclusions that make recovery under the policy virtually impossible, would have been subject to scrutiny by an actual group of persons. A lawful group of persons would have had the opportunity to determine the relative merit and value of the policy before providing its members with the opportunity to purchase it. In creating the fictitious Trust for the purpose of issuing the policy to themselves, HealthExtras and the other Defendants avoided allowing South Carolina residents to have the protection of an association formed for their benefit to review and scrutinize the Master Policy to determine whether this insurance product offered for sale to them was worthy of their hard-earned dollars.

76.    In furtherance of their illegal and deceptive acts, the Defendants actually issued the policy to themselves, AIG Group Insurance Trust, for the Account of HealthExtras an illegal and sham Trust that is alter-ego of the Defendants, with premiums collected for the benefit of them rather than a valid group of persons. As part of the scheme, the Defendants have issued the Master Policy to themselves, and refuse to allow the HealthExtras members access to it. Further, since the members are not part of any real group, and the Defendants own and control the Insurance Trust, the members who are actually paying the premiums or membership fees as the Defendants characterize, have no opportunity to communicate with each other about any business practices or unfair claims practices regarding the HealthExtras Accidental Permanent Disability Policy. This illegal scheme devised and perpetrated by the Defendants effectively keeps the members in the dark and conceals the true nature of the Master Policy that contains broad harsh exclusion which the various underwriters use to wrongfully deny claims.

77.    All of the Defendants' concerted actions in this regard were done to avoid insurance

regulation and to disguise the fact that the policy has no value to the actual persons who were and are paying the premiums.

### A Scheme of False and Deceptive Advertising

78.    Upon information and belief, HealthExtras in concert and conspiracy with the other Defendants directly targeted Ralph Williams and certain other South Carolina residents with direct mail advertisements that included, but are not limited to the following misleading statements:

a.    This program provides valuable protection in the event you become permanently totally disabled due to an accident.

b.    This HealthExtras Benefit Program provides you with a $1,000,000 tax-free cash payment if you're permanently disabled due to an accident.

c.    If an accident leaves you - the primary member - permanently disabled, you will receive a lump sum payment of $1,000,000.

d.    After 12 months of continuing and permanent disability caused by an accident - including the inability to work - the primary member will receive a payment of $1,000,000.

e.    You're covered with a $1,000,000 tax-free cash payment if you are permanently disabled as a result of an accident.

79.    However, in sharp contrast to the HealthExtras advertisements, policy series C11695DBG is replete with extremely harsh, restrictive and confusing exclusions and contradictory terms and definitions which intentionally renders the policy virtually worthless to purchasers.

80.    For example, under the HealthExtras disability policy "Permanently Totally Disabled" is defined to mean:

1. That the Insured Person has suffered any of the following:
    a. loss of both hands or feet; or
    b. loss of one hand and one foot; or
    c. loss of speech or hearing in both ears; or

24

d. Hemiplegia; or
e. Paraplegia; or
f. Quadriplegia; and

2. The Insured is under the supervision of a Physician unless the Insured has reached his or her maximum point of recovery.

Loss of a hand or foot means complete severance through or above the wrist or ankle joint. Loss of hearing in both ears means total and irrevocable loss of the entire ability to hear in both ears.  Loss of speech means total and irrecoverable loss of the entire ability to speak.

Hemiplegia means the complete and irreversible paralysis of the upper and lower Limbs of the same side of the body. Limb(s) means entire arm or entire leg. Paraplegia means the complete and irreversible paralysis of both lower Limbs. Quadriplegia means the complete and irreversible paralysis of both upper and lower Limbs.

81.    Further, "Loss" is defined to mean:

| Loss of: | Percentage |
|---|---|
| Sight of Both Eyes | 100% |
| One Hand & Sight of One Eye | 100% |
| One Foot & Sight of One Eye | 100% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Hearing in One Ear | 25% |
| Thumb & Index Finger of Same Hand | 25% |

Loss of a hand or foot means complete severance through or above the wrist or ankle joint. Loss of sight of an eye means total and irrecoverable loss of the entire sight in that eye. Loss of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

82.    These policy definitions are in direct violation of South Carolina law. Specifically, South Carolina Insurance Regulation 69-34 governs accident policies and provides that "policy definitions: except as provided hereafter, no individual accident . . . policy . . . delivered or issued for delivery to any person in this state shall contain definitions restating the matters set forth below unless such definitions comply with the requirements of this section."

25

Within this section, paragraph nine (9) requires that total disability be defined as follows:

> "(9) Total Disability: (a) "Total Disability" shall not be defined more restrictively than the inability of the insured to engage in his own occupation during the first year of disability or for the length of the benefit period if less than one year.  After the first year of disability, total disability may be defined as the complete inability of the insured to engage in any employment or occupation for which the insured is qualified."

83.    There are many examples in the public record of HealthExtras members being denied disability benefits after suffering catastrophic injuries, rendering them unable to work, yet being denied benefits by one of the figurehead underwriters engaged by HealthExtras based on one or more of the extremely restrictive and confusing exclusion in the Master Policy which is not provided to the members or any group or association for which they belong.   Upon information and belief there are thousands of these unfair and unconscionable denials which are not in the public record.

84.    For nearly 14 years, the various underwriters engaged by HealthExtras have used the harsh and restrictive exclusions in the HealthExtras policies to deny disability claims while collecting millions from South Carolina residents and all 50 states.

85.    Therefore, Plaintiff Williams and all other similarly situated South Carolina residents were charged premiums by these Defendants that were illegal under South Carolina statutes and Department of Insurance regulations and were thus proximately damaged by the actions of these Defendants. Deceptive and False Advertising of the HealthExtras Disability Policy.

**A Scheme of Illegal Underwriting of the HealthExtras Disability Policy**

86.    All HealthExtras policyholder information is retained and controlled by

26

HealthExtras, a company who is not a licensed insurance Company anywhere.  Neither the underwriters, National Union, Virginia Surety, Stonebridge Life Insurance nor Alliant, the current Broker of Record, possesses or retains any information whatsoever about any person who has purchased and paid premiums for the HealthExtras disability policy.

87.    All policyholder information is retained by HealthExtras.   All decisions regarding the HealthExtras disability policy are made by HealthExtras including the amount of premiums to charge.   Upon information and belief, HealthExtras also drafted and developed the policy language, including the harsh exclusions used to deny claims.

88.    Underwriters, Defendant, National Union, Defendant, Virginia Surety as well as other underwriters like Stonebridge Life Insurance Company, as well as the Broker of Record, Defendant Alliant, are merely figureheads for the illegal HealthExtras scheme.

89.    On October 15, 2013 HealthExtras mailed to Ralph Williams a Description of Coverage of his HealthExtras disability policy on HealthExtras letterhead proclaiming it was from the Broker of Record Alliant Services Houston, Inc., P.O. Box 1159, Rockville, MD 20849-9808. (Exhibit A).   However, P.O. Box 1159, Rockville, MD 20849-9808, is also the mailing address of HealthExtras.   This is only one fact that illustrates that HealthExtras, a company not licensed anywhere as an insurance company controls the entire HealthExtras Program.

90.    Further, National Union, who is the purported underwriter for by far the most significant risk in the HealthExtras disability policy (the $1,000,000 Disability Benefit), receives only $2.24 on a monthly basis for each member who pays for the HealthExtras disability policy. This is roughly only 15% of the current rate of $15.95 per month paid by current Healthextras members for the HealthExtras disability policy with a $1,000,000 Disability Benefit.   Therefore,

roughly 80% of all premiums paid for the HealthExtras disability policy is paid to HealthExtras, a company that is a company not licensed anywhere as an insurance company. This is an illustration of the excessive premiums charged for the HeatthExtras disability insurance product.

91.    Although the policy summary delivered to the HealthExtras members for the Permanent and Total Disability insurance component of the HealthExtras disability policy lists Federal Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, and Stonebridge Life Insurance Company and Virginia Surety as the purported insurers/underwriters, upon information and belief, these insurers have agreed in writing that HealthExtras will pay certain claims made for disability benefits under the HealthExtras disability policy.

92.    These agreements include but are not limited to a July 17, 2000 letter agreement between HealthExtras and at least one insurer indicating that HealthExtras agreed to pay disability benefits to any person who does not qualify as permanently and totally disabled under the policy as defined in the policy, but who is nonetheless unable to perform the material and substantial duties of such person's regular occupation. Upon information and belief, additional agreements may be revealed during discovery in this matter. This scheme effectively transfers the underwriting risk to HealthExtras making HealthExtras the underwriter.

93.    HealthExtras is not an insurance company and is not licensed to underwrite insurance of any kind in South Carolina, or any other state. However, this scheme allows HealthExtras, in conspiracy with the other Defendants, to avoid insurance regulations that are designed to protect the public and is in direct violation of numerous sections of the South Carolina Insurance Code.

94.    This conspiracy and scheme is abhorrently against public policy and constitutes

28

wilful acts by HealthExtras and the other Defendants.

95.    HealthExtras is not an insurance company and has never been a licensed insurer in the State of South Carolina or any other state and an agreement by them and the other Defendants to pay claims constitutes a conspiracy between HealthExtras and the other Defendants to defraud consumers.

### Joint Enterprise and Conspiracy to Deceive the Public and Violate South Carolina Law

96.    All Defendants engaged in a joint enterprise and conspiracy to utilize their efforts to sell, broker, underwrite, collect, allocate and share premiums derived from the HealthExtras disability program to Plaintiff and the putative Class Members, for their own individual and mutual benefit, without fully disclosing to Plaintiff and the putative Class Members that the policies being sold to them did not and could not comply with South Carolina law, and said lack of compliance was material information about such policies.

97.    Defendants engaged in agreements for a common purpose, a common pecuniary interest, and a joint venture to share illegal profits and all Defendants engaged in at least one act in furtherance of the illegal HealthExtras scheme.

98.    As a result, the Defendants are jointly and severally liable for any and all damages or restitution that the Plaintiff and Class members are entitled to recover in this action.

99.    After inducing Plaintiff to purchase and retain the insurance policies in question, Defendants engaged in a deliberate course of conduct that breached Defendants' duties in tort and contract of insurance with Plaintiff or fraudulently concealed from Plaintiff and others similarly situated the true facts concerning these policies and the nature and extent of the deceptive sales tactics used to sell and post-sale market the products. The actions of

Defendants were designed to, and did, fraudulently conceal from Plaintiff (and others similarly situated) the deceptive misrepresentations and fraudulent concealment upon which the sales had been made. The Defendants also breached their duties in tort to Plaintiff, breached the contract of insurance, and all were acts of bad faith.

100.    Both prior to and subsequent to Defendants' manipulation of the Policy definitions, upon information and belief, the loss ratio for the Policy was significantly less than the regulatory minimum – meaning Plaintiff, and all other cardholders, paid more than the required premium.

101.    Additionally, upon information and belief, the Policy itself requires the Policy to be enforced in accordance with applicable regulations and laws.

102.    Based upon Defendants' respective extensive involvement both in the creation and in the sale of the Policy, Defendants were aware of and chose to ignore their obligations under the Policy, the applicable Trust documents, and the applicable regulatory laws concerning the charging of excess premiums (marking up), the loss ratio requirements, and the improper manipulation of policy terms and coverage.

103.    Plaintiff did not learn the details of Defendants' scheme, and still is searching because the Defendants have concealed for the full details, including but not limited to the premium mark-up and the manipulation of the Policy terms.

104.    Previously in this Complaint, Plaintiff has made allegations about the solicitations and marketing materials that Plaintiff received in 1999 or 2000.    These solicitations contained misrepresentations and were misleading, unfair, and deceptive in that they falsely led Plaintiff to believe that he would be entitled to a payment of $1 Million if he were to become permanently and totally disabled.

105.    Upon information and belief, such that will be found and supported in discovery, the solicitations and promotional or marketing materials were false, misleading, unfair and deceptive in that the materials, upon information and belief, included, but not limited to, such information as follows:

a.    utilized a misleading policy name;

b.    emphasized in oversized, bold letters "Financial Security" and stated "You're covered with up to $1 Million if an accident leaves you permanently disabled";

c.    stated, without qualification or further definition, that the Policy or alleged Plan "provides you with $1 Million in one lump sum if you are permanently disabled due to an accident and can't return to work;"

d.    minimized and obscured exceptions, reductions, and the limitations of the policy by listing them in small print on the back of the solicitations;

e.    failed to provide a conspicuous, unambiguous definition of disability;

f.    promoted for sale and unconscionable insurance policy with illusory coverage of no real economic value; and

g.    such other statements or other implications that will be found and supported in discovery.

106.    Upon information and belief, the Policy limitations were not conspicuously set out in close conjunction to the bold and over-emphasized representations including Defendants' representation that the Policy would

"pay you a $1 Million lump sum benefit in the event a catastrophic accident leaves you totally and permanently disabled, and unable to work."

107.    Upon information and belief, Defendants, instead of clearly disclosing any limiting language, actually obscured the limitations by hiding the information the back of the advertising materials and by using very fine and small print not easily readable or

31

understandable by the average person, all of which, upon information and belief, will be found and supported in discovery.

108.    The oversized statements "You're covered with up to $1 Million if an accident leaves you permanently disabled" and "The Accident Disability Plan provides you with $1 million in one lump sum if you are permanently disabled due to an accident and can't return to work" exaggerated the Policy benefits.

109.    In reliance upon the false, misleading, unfair and deceptive representations contained in the solicitations and promotional or marketing materials, Plaintiff purchased the Policy and paid the premiums; therefore with an effective date in the year of either 1999 or 2000, which will be determined during discovery.

110.    Defendants engaged in agreements for a common purpose, a common pecuniary interest, and a joint venture to share illegal profits and all Defendants engaged in a least one act in furtherance of the illegal HealthExtras scheme.

## **FIRST CAUSE OF ACTION**

**Violation of Racketeering Influenced and Corrupt Organizations Act ("RICO"),**

**18 U.S.C. §§ 1961 – 1968**

111.    Plaintiff repeats and realleges each and every previous paragraph of this complaint as though fully incorporated herein.

112.    Plaintiff is a "person" within the meaning of 18 U.S.C. §1961-1968.

113.    Defendants are associated as "enterprise(s)" within the meaning of 18 U.S.C. §1961-1968.  Collectively, these associations form the "HealthExtras Enterprise".

114.    All Defendants intentionally acquired millions of dollars through a pattern of

racketeering activity in violation of 18 U.S.C. §1961-1968.

115.    All Defendants conducted and participated in the enterprise(s) through a pattern of racketeering activity in violation of 18 U.S.C. §1961-1968.

116.    All Defendants conspired to violate both 18 U.S.C. §1962 in violation of 18 U.S.C. §1961-1968.

117.    The predicate acts by Defendants that make up the pattern of racketeering activity include:

A.    Multiple acts of theft and fraud and conversion in violation of 18 U.S.C. §1962 in connection with:

1.    intentionally or knowingly marketing and selling a disability product to an unlawful "blanket group" and creating a sham Trust consisting of named Defendants as the policyholder;

2.    intentionally or knowingly taking and appropriating by unlawful means millions of dollars by charging improper insurance premiums for illegal insurance and fraudulently increasing insurance premiums paid by Plaintiffs and members of the putative Class;  and;

3.    intentionally or knowingly committing other acts of theft and fraud as alleged above.

B.    Multiple acts in violation of 18 U.S.C. §1962 in connection with:

1.    intentionally or knowingly sending false emails from, through and to computers  in South Carolina relating to insurance premiums and insurance fees and insurance coverages;

2.    intentionally or knowingly sending false emails containing fraudulently

33

inflated invoices for insurance premiums;

       3.  intentionally or knowingly sending false emails from, through and to computers in South Carolina relating to Defendants' knowledge of fraud, theft and other intentional and  knowing misconduct as alleged above.

    C.      Multiple acts of mail fraud in violation of 18 U.S.C. 1341, in connection with multiple and continuous use of the United States mail in furtherance of the fraudulent scheme,  including:

       1.  The mailing of information relating to the solicitation of disability  insurance that is illegal;

       2.  The mailing of information relating to the illegal sale of disability insurance;

       3.  The mailing of information relating to the illegal post-sale marketing of  disability insurance;

       4.  The mailing of information relating to the illegal creation of "trusts" in which to  "place" this insurance to attempt to avoid state insurance regulations and laws;

       5.  The mailing of information relating to the illegal calculation and collection of  excessive premiums or "fees" charged for this illegal insurance product.

       6.  Upon information and belief, other fraudulent communications by Defendants  employing the U.S. mail.

    D.      Multiple acts of wire fraud in violation of 18 U.S.C. 1343, in connection with multiple and continuous use of electronic mail and other wire communication in furtherance of the  fraudulent scheme, including;

       1.  Debiting/charging monthly premiums from the Plaintiff and other Class Members' debit/credit card account for worthless disability insurance;

34

2.    Debiting/charging monthly premiums from the Plaintiff and other Class Members' debit/credit card account for worthless disability insurance;

3.    Emailing and/or mailing worthless and illegal Accident Protection Plan Program Summaries and Description of Coverages to the Plaintiff and other Class Members.

4.    Upon information and belief, other fraudulent communications by Defendants employing electronic mail and other wire communication.

## SECOND CAUSE OF ACTION

### Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing

118.    Plaintiff realleges and incorporates by reference each of the factual allegations set forth in this complaint as if set forth herein.

119.    Defendants have breached the insurance contracts, including the duty of good faith and fair dealing to Plaintiff, and similarly situated South Carolina residents, by engaging in the conduct set forth hereinabove.

120.    Pursuant to the Policy (including the "Accidental Disability Plan") as issued by Federal Insurance and also by National Union, a contract for insurance entered into between Defendant and the Class, specifying a specific premium and specifying the terms under which the $1 Million lump sum benefit was payable.

121.    Contrary to the terms of the Policy as issued by Federal and by National Union (including the "Accidental Disability Plan"), as well as applicable regulatory authority, Defendants:

a.    Collected premiums in excess of the premium specified in the Policy; and

b.    Applied a "Loss of Use" requirement to the definition of disability.

122.    Defendants' actions constitute a breach of contract and the covenant of good faith and fair dealing.

123.    Defendants, individually and collectively, knew that the HealthExtras disability policy could only be sold to legal blanket groups, and that the HealthExtras disability policies were not members of a lawful group under South Carolina law.    Instead, Defendants used the guise of insurance trusts in place of a lawful blanket group.

124.    Despite Defendants' collective knowledge, Defendants failed to reveal to Plaintiff, and other similarly situated South Carolina residents that their HealthExtras disability policies were illegal and of little value, that their premiums were thus illegal and not approved and excessive, that they paid for illegal policies and that they were not part of any lawful blanket group.

125.    Despite this duty, Defendants sold illegal HealthExtras insurance policies, collected premiums therefore and shared the monies derived therefrom from Plaintiff, and other similarly situated South Carolina residents and thus breached the insurance contracts, including the duty of good faith and fair dealing, as a matter of law. This breach proximately caused damages to Plaintiff, and other similarly situated South Carolina residents.

126.    Plaintiff, and other similarly situated South Carolina residents have been proximately injured as a result of the Defendants' breach of contract, including the duty of good faith and fair dealing and are thus entitled to damages proximately caused them by said breach.

### THIRD CAUSE OF ACTION

### Breach Of Contract Accompanied By A Fraudulent Act

127.    Plaintiff re-alleges the above paragraphs by reference as if restated verbatim herein.

128.    Defendants' actions, omissions, concealments, and failures to act, as set forth in detail hereinabove, constitute breach of the insurance contract between Defendants and Plaintiff.

36

129.    Defendants' breach of contract was accompanied with fraudulent intent relating to the breach as evidenced by the circumstances surrounding the breach, to-wit: Defendants' numerous misrepresentations, omissions, concealment of material facts, illegal conduct, and improper conduct as set forth in detail hereinabove.

130.    As a result of Defendants' breach of contract accompanied by a fraudulent act, Plaintiff and the proposed Class Members have suffered actual and consequential damages.

131.    Defendants' breach of contract was accomplished with fraudulent intent and accompanied by a fraudulent act.

132.    Plaintiff is informed and believes he and the proposed Class Members are entitled to judgment against the Defendants, jointly and severally, for actual damages, compensatory damages and punitive damages for breach of contract accompanied by a fraudulent act.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

133.    Plaintiff realleges and incorporates by reference each of the factual allegations set forth in this complaint as if set forth herein.

134.    Defendants have been and continue to be enriched by their deceptive acts and omissions alleged herein for all states wherein the Class' members reside.

135.    These deceptive acts and omissions allow Defendants to gain millions of dollars in profits in the State of South Carolina that would not have been gained but for Defendants' deceptive acts and omissions.

136.    Plaintiff and the proposed Class members and those similarly situated paid Defendants an amount that far exceeds the value of the insurance product identified herein as a

result of Defendants' acts and omissions.

137.    Plaintiff and the Class members suffered damages due to the Defendants' acts and omissions as alleged herein.

138.    Defendants have and continue to be unjustly enriched as a result of their deceptive acts and omissions.

139.    Defendants lack any legal justification for engaging in a course of deceptive acts and omissions as alleged herein at Plaintiff and the Class' expense.

140.    No other remedy at law can adequately compensate Plaintiff and the Class members for the damages occasioned by Defendants' conscious choice to engage in a course of deceptive acts and omissions.

141.    When seeking to purchase accidental disability insurance and emergency accident and sickness insurance, Plaintiff, and the putative Class Members have a choice of various underwriters, coverage amounts and coverage terms.

142.    Plaintiff, and similarly situated South Carolina residents purchased coverage due to its relatively low price point, its high coverage amount and other market based factors, including the marketing and likeness of HealthExtras Spokesperson, Christopher Reeve.

143.    Plaintiff and the putative Class Members purchased their HealthExtras disability insurance in order to protect themselves should they suffer disability as a result of an accidental injury or accident or sickness while traveling.   However, the actual HealthExtras policy is virtually worthless.

144.    Defendants, individually and collectively, failed to disclose that the insurance coverage being sold to Plaintiffs and the putative Class Members was illegal under South Carolina

law in that Plaintiff and the putative Class Members were not members of a lawful blanket group.

145.     By purchasing the HealthExtras program that included the component policies and paying fees and premiums, Plaintiffs and the putative Class Members conferred a benefit upon the Defendants, without knowledge that the purchased coverage was illegal and void.

146.     Defendants knowingly accepted and retained this non-gratuitous benefit conferred on them by Plaintiff and the putative Class Members despite Defendants' knowledge the subject policies were illegal as a matter of South Carolina law for the reasons enumerated herein.

147.     Plaintiff and the putative Class Members have spent and continue to spend thousands of dollars in premium payments for illegal policies that could never be approved by the South Carolina Department of Insurance or lawfully sold to South Carolina residents.

148.     The Defendants have been unjustly enriched in retaining the payments paid by Plaintiff and the putative Class Members for the Accidental Permanent and Total Disability coverage and the Emergency Accident and Sickness Benefit insurance coverage.

149.     The Defendants' retention of the non-gratuitous benefit conferred by Plaintiffs and the putative Class Members under these circumstances is unjust and inequitable.

150.     No other remedy at law can adequately compensate Plaintiff and the putative Class Members for the economic damages resulting from Defendants' wrongful actions as alleged herein.

151.     Because Defendants' retention of the non-gratuitous benefit conferred upon them by Plaintiff and the putative Class Members is unjust and inequitable, Defendants must pay restitution in the form of disgorgement of all revenues, earnings, profits, compensation and benefits which South Carolina residents have paid to the conspirators as a result of such business

acts and practices.

## FIFTH CAUSE OF ACTION

### Civil Conspiracy

152.    Plaintiff realleges and incorporates by reference each of the allegations set forth in this Complaint as if set forth herein.

153.    All Defendants engaged in a conspiracy to utilize their efforts to sell, broker, underwrite, collect, allocate and share premiums derived from the HealthExtras disability insurance policy to the Plaintiff and the putative Class Members, for their own individual and mutual benefit, without fully disclosing to Plaintiff and the putative Class Members that the policies being sold to them did not and could not comply with South Carolina law, said lack of compliance being material information about such policies.  Further, this lack of disclosure constitutes an omission of material fact regarding the supposed polices as the same have no value. As a result, Plaintiff and the putative Class Members purchased, paid for and retained HealthExtras disability insurance policies that were illegally solicited, marketed, sold, brokered, serviced, underwritten, and administered by Defendants, and paid to Defendants by monthly or annual premiums.

154.    In the marketing, sale, brokerage, servicing, underwriting and administration of the illegal policies as set forth herein, all Defendants agreed and conspired, as described herein, for the purpose of lawful activities by unlawful means, or unlawful activities by lawful means.

155.    Each Defendant committed at least one overt act, as described herein, in furtherance of the aims of the agreement and pursuant to a common scheme.

156.    As a direct result of Defendants' conspiratorial actions, Plaintiffs and the putative

Class Members have suffered damages.

## SIXTH CAUSE OF ACTION

### Injunction

157.    Plaintiff realleges and incorporates by reference each of the allegations set forth in this Complaint as if set forth herein.

158.    Defendants continue to market, sell, broker, underwrite, collect, allocate and share premiums for the illegal HealthExtras disability policies through the pendency of this action despite the clear and continuing violations of the South Carolina law and public policy.

159.    Plaintiff and the putative Class Members are entitled to injunctive relief to stop the Defendants from marketing and collecting of illegal insurance premiums for the HealthExtras disability policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all putative Class Members, demand judgment against Defendants as follows:

(a)    An order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and his attorneys as Class Counsel to represent the Class Members;

(b)    An order declaring the HealthExtras disability policy illegal under South Carolina law and against public policy;

(c)    An order entering judgment in favor of Plaintiff, Ralph Williams, and the Class Members against Defendants;

(d)    An order awarding damages in the form of disgorgement of all revenues, earnings,

41

profits, compensation and benefits which South Carolina residents have paid to the conspirators as a result of the illegal acts, restitution, actual damages, treble damages, punitive and exemplary damages, against Defendants in favor of Plaintiff and putative Class Members in an amount to be determined by the Court as fair and just given Defendants' wrongful conduct;

(e)     Injunctive relief in the form of an Order prohibiting further of the Defendants' unlawful activities in the State of South Carolina or an order of non-monetary relief as the Court may deem proper; and

(f)     An order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses, including costs of experts and of suit.

## DEMAND FOR JURY TRIAL

Plaintiffs and the putative Class Members hereby demand a jury trial on all claims so triable in this action.

Respectfully submitted,

**HOPKINS LAW FIRM, LLC**

*/s/William E. Hopkins, Jr.*
William E. Hopkins, Jr.   (Fed. I.D. #6075)
12019 Ocean Highway
Post Office Box 1885
Pawleys Island, South Carolina 29585
Telephone:     843-314-4202
Facsimile:      843-314-9365
bill@hopkinsfirm.com

42

Aaron C. Hemmings, (pro hac vice to be filed)
**Hemmings & Stevens, P.L.L.C.**
5613 Duraleigh Road, Suite 151
PO Box 90698
Raleigh, NC 27675
Telephone:     919-277-0161
Facsimile:      919-277-0162
ahemmings@hemmingsandstevens.com


Joseph "Jay" H. Aughtman (pro hac vice to be filed)
**Aughtman Law Firm, LLC**
1772 Platt Place
Montgomery, AL 36117
Telephone:    334-215-9873
Facsimile:      334-213-5663
jay@aughtmanlaw.com

March 12, 2014